UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SECURITIES and EXCHANGE COMMISSION,

                              Plaintiffs,                    **REPORT AND**
                                                            **RECOMMENDATION**
                                                            CV 12-2937 (ADS) (GRB)

        -against-

BRYAN ARIAS, *et al.*

                              Defendants.
-----------------------------------------------------------X
**BROWN, Magistrate Judge:**

       This case raises the interesting question of the appropriate scope of a stay of civil enforcement proceedings pending the resolution of a related criminal prosecution. While the parties agree that a stay of discovery is warranted, several defendants who have not yet answered the complaint seek a stay of all proceedings in the action, while plaintiff, Securities and Exchange Commission ("SEC"), argues that the stay should be limited to discovery to avoid unnecessary delay. For the reasons set forth below, it is hereby recommended that defendants' motion be GRANTED insofar as the time to answer the complaint is stayed pending the resolution of the related criminal proceeding, and that the motion be DENIED with respect to any other response to the complaint – such as filing a motion to dismiss.

## BACKGROUND

       The relevant, undisputed facts include the following: this SEC enforcement action, filed on June 12, 2012, emanates from a purported $400 million Ponzi scheme[1] perpetrated by

---

[1] "A Ponzi scheme is an investment fraud that involves the payment of purported returns to existing investors from funds contributed by new investors. Ponzi scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk." *See Ponzi Schemes – Frequently Asked Questions*, Securities and Exchange Commission (Sept. 12, 2012), http://www.sec.gov/answers/ponzi.htm. Though he did not invent this kind of scam, Charles Ponzi earned millions of dollars in the 1920s by drawing investors into

1

Nicholas Cosmo, notwithstanding his previous conviction and sentencing to a 21-month term of imprisonment for fraud in 1999. *See In re Agape Lit.*, 681 F. Supp. 2d 352, 357 (E.D.N.Y. 2010). The scheme, operated through several corporate entities including Agape World, Inc., lured 1,500 investors with promises of returns far above market rates, and invited comparison with the infamous Bernie Madoff.[2] As the Court wrote in another related civil case:

> From October of 2003 through his most recent arrest in January of 2009, Cosmo devised and orchestrated a Ponzi scheme through Agape and various other entities under his control. Agape held itself out as a company that provided short-term bridge loans to businesses and individuals that were unable to obtain financing from commercial banks. Through direct solicitation and various brokers, Agape was able to raise an estimated $400 million by promising investors enticing short-term returns of 12 to 15%.
>
> In actuality, although Agape received approximately $400 million from investors between October of 2003 and January of 2009, the company made only approximately $25 million in loans. Large returns paid to early investors simply came from money paid by subsequent investors. Cosmo used the investments to finance a lavish lifestyle and pay Agape brokers handsome commissions for soliciting new investors. In order to compensate for the lack of revenue from legitimate loans, Cosmo used investor money to make risky bets in the commodities market. In the process, he lost approximately $80 million.

*In re Agape Lit.*, 681 F. Supp. 2d at 357. Cosmo has been convicted in connection with this scheme, and sentenced to 300 months' imprisonment. *United States v. Cosmo*, No. 09-CR-0255 (E.D.N.Y. filed Jan. 26, 2009).

The defendants herein, several of whom are also defendants in an ongoing, parallel criminal prosecution -- *United States v. Ciccone*, 12-CR-0357 (E.D.N.Y. filed Apr. 23, 2012) -- were allegedly the principal sales associates for Agape. Eleven of the defendants filed answers

---

an endeavor involving arbitrage of international postal coupons. Ponzi's business, which turned on swapping the coupons for postage stamps, was both legitimate and profitable, but insufficient to sustain the 50% returns he had promised to investors. So Ponzi began using later investments to satisfy earlier obligations. In the end, his scheme collapsed, costing investors millions and causing the failure of six banks. *See* Mary Darby, *In Ponzi We Trust*, Smithsonian Magazine, Dec. 1998; *cf. United States v. Cook,* 573 F.2d 281, 282 (5th Cir. 1978) (describing Ponzi's history).

[2] *See, e.g.*, Leslie Wayne, *Troubled Times Bring Mini-Madoffs to Light*, The New York Times, Jan. 27, 2009.

to the complaint, DE [20], [22]-[28], [37], while two of the defendants – Anthony Ciccone, who is represented by counsel, and Salvatore Ciccone, who is appearing *pro se* -- sought and received an extension to answer the complaint up to and including September 24, 2012. DE [36]. Anthony Massaro, another defendant, has neither answered nor moved to extend the time to answer; however, Mr. Massaro appeared through counsel at the motion hearing on September 10, 2012, and joined the motion to stay discussed herein.[3]

On August 14, 2012, the Government moved to intervene to seek a stay of discovery in this action (with limited exceptions) pending resolution of the *Ciccone* prosecution so as to not interfere with (1) an ongoing grand jury inquiry and (2) orderly proceedings in the context of the criminal case. DE [29]. The exceptions suggested by the Government included (1) an offer by the Government to make Rule 16 materials -- in particular, hundreds of boxes of documents obtained during search warrant execution -- available to all parties in this action,[4] (2) expert discovery and (3) third-party authentication of business records.[5] Plaintiff SEC filed a response, taking no position on the Government's application. DE [31]. Two defendants, Michael P. Dunne and Anthony Ciccone, responded to the Government's application by seeking a stay as to all proceedings in the action, not just a stay of discovery. DE [35], [38]. By Order dated September 7, 2012, Judge Spatt referred these motions to the undersigned for a recommendation. DE [44].

---

[3] Several additional defendants have not answered or otherwise appeared in this action; as such, no recommendations contained herein apply to those individuals or the plaintiff's claims against those defendants.

[4] Though, as discussed below, the Court granted the Government's application to stay discovery, the defendants were directed to diligently pursue this opportunity.

[5] In his papers, defendant Dunne also argues, rather unpersuasively, that the Government's suggestion that expert discovery and third-party authentication of records proceed during the stay "will relegate Mr. Dunne to the position of having to choose between his right under the Fifth Amendment and the risk of not fully complying with a discovery obligation." DE [38] Ex. 1, at 4. As to expert witnesses, very little can be accomplished while fact discovery is stayed, and certainly nothing that could possibly require forcing Dunne to incriminate himself. As to third-party authentication of records, it is difficult to imagine how such proceedings could implicate any defendant's right against self-incrimination. As such, the parties should be free to pursue such limited discovery during the stay.

At a hearing on September 10, 2012, the parties appeared before the undersigned. Because all parties consented to the motion of the United States to intervene in this action for the purpose of seeking a stay, the undersigned granted that application. Furthermore, as there was no objection by any party, the undersigned granted the Government's motion to stay discovery, subject to the limitations proposed, pending resolution of the related criminal prosecution. DE [45]. Thus, the remaining issue is defendants' motion to stay this action in its entirety, based on concerns by defendants who have not yet answered that filing an answer would also require them to compromise their Fifth Amendment rights against self-incrimination. Plaintiff SEC opposes this application, principally wishing to avoid unnecessary delay, and wanting to compel the three defendants to file motions to dismiss if appropriate.

## DISCUSSION

Defendants' application, relevant only to those defendants who have not yet filed an answer, raises the question of whether answering a complaint in a civil proceeding could implicate the Fifth Amendment rights of the answering defendant. As the Supreme Court has observed, there is no question that the Fifth Amendment applies to a civil proceeding:

> The Fifth Amendment provides that no person 'shall be compelled in any criminal case to be a witness against himself.' The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 41 U.S. 70, 77 (1973). The issue arises as to whether filing an answer constitutes responding to an "official question." The question turns, in part, on the obligations of a defendant answering a civil complaint. In *Brown v. Pierce*, 74 U.S. 205 (1868), the Supreme Court held:

4

> Material allegations in the bill of complaint ought to be answered and admitted, or denied, if the facts are within the knowledge of the respondent; and if not, he ought to state what his belief is upon the subject, if he has any, and if he has none, and cannot form any, he ought to say so, and call on the complainant for proof of the alleged facts, or waive that branch of the controversy . . .

*Brown* at 211. Rule 11 of the Federal Rules of Civil Procedure states that by signing a responsive pleading, a party (or its attorney) "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence."[6]

Against this backdrop, it is difficult to imagine how defendants could answer the Complaint in this matter without implicating their rights against self-incrimination. This is particularly true given the nature of the allegations herein. Take, for example, paragraphs 17 and 52 of the Complaint, which allege as follows:

> 17. Anthony Ciccone, age 39, of Locust Valley, New York, during the period from April 2006 through January 2009, offered and sold Agape Securities to at least 535 investors. In April 2006, Anthony Ciccone incorporated Anthony Ciccone Enterprises LLC, a New York limited liability company, and he used accounts in its name for his Agape-related banking. During the period he offered and sold Agape Securities, Anthony Ciccone received at least $11,735,518 gross in commissions or other payments from Agape and AMA.
>
> 52. Prior to Investor D's May 2007 purchase of an Agape Investment Contract, Salvatore Ciccone falsely told Investor D that: (a) Agape made short-term bridge loans to companies, usually commercial construction companies, that could not get traditional loans from a bank; (b) the Agape investments were 100% safe because the loans to borrowers were secured by property and Agape took a partial ownership position in the borrower valued at up to 125% of the loan amount in

---

[6] The responsive pleadings to be filed by defendants here do not have to be verified by the client, as is the case in a civil forfeiture action. *Compare* Fed. R. Civ. P. 11(a) (providing that an answer be signed "by at least one attorney of record") with Supplemental Maritime Rule C(6)(a) (requiring verified answer). While this seems different, it is, upon consideration, a distinction without a difference. First, one of the defendants is appearing *pro se*, and is thus required to sign the answer, effectively certifying the veracity of the denials. Fed. R. Civ. P. 11(a), 11(b). Second, represented parties are bound by pleadings filed by their attorneys. *See, e.g.*, *United States v. GAF Corp.* 928 F.2d 1253, 1260 (2d Cir. 1991) (upholding admission into evidence of prior, inconsistent bill of particulars).

>the event of default; (c) none of the borrowers had ever defaulted on an Agape loan; and (d) Agape would use Investor D's money, together with money from other investors, to make a short-term bridge loan to a commercial construction company. Investor D continued to purchase Agape Securities from Salvatore Ciccone and remained invested in Agape Securities until January 2009.

Moreover, a comparison of the Complaint and the related indictment make it plain that the certain allegations are substantially the same. *Compare, e.g.*, Indictment ¶ 1 ("Agape solicited money from investors by holding itself out as a provider of short-term bridge loans to commercial borrowers, which loans purportedly generated high-interest returns for Agape and its investors") *with* Complaint ¶ 33 ("the Agape Investment Contracts that the Defendants sold to investors falsely represented participation in short-term, high interest bridge loans purportedly made by Agape to specific commercial borrowers "). Clearly, defendants may invoke their Fifth Amendments in answering the Complaint. *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Grp., Inc.*, 297 F. Supp. 2d 531, 533 (E.D.N.Y. 2003) ("Nothing bars the Defendants from asserting this defense in their answer, 'as to any matter which they believe in good faith is covered by the privilege'"); *Beth Isr. Med. Ctr. v. Smith*, 576 F. Supp. 1061, 1072 (S.D.N.Y. 1983) ("The defendants, of course, are entitled to assert their Fifth Amendment privilege in their answer"); *S.E.C. v. Leach*, 156 F. Supp. 2d 491, 496-497 (E.D. Pa. 2001) (in SEC civil fraud action, "the corporate officer . . . cannot be required to answer the Complaint on behalf of LMC because to do so might incriminate him personally").

That the defendants may invoke the Fifth Amendment does not end the inquiry as to whether a stay is appropriate. The decision to assert the Fifth Amendment is not without consequence; depending on the circumstances, leave may not be granted to withdraw said assertion, which may have significant consequences in the civil litigation. *See, e.g.*, *United States v. Certain Real Prop. and Premises Known as 4003-4005 5th*

*Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) (upholding district court's refusal to allow claimant to withdraw privilege, and resulting grant of summary judgment against claimant).[7]  Courts need to balance the rights of all litigants, endeavoring to avoid unnecessarily burdening parties whose Fifth Amendment rights have been implicated, while protecting the interests of their adversaries.  As the Second Circuit has held in the context of a forfeiture action:

> These considerations do not mean that a district court, in trying to accommodate all interests, is necessarily required to stay a forfeiture action while a claimant seeks to resolve a parallel criminal action or that it must enter a protective order which would keep a claimant's testimony from being used in any other proceeding.  Nevertheless, when a claimant validly invokes the Fifth Amendment and expeditiously seeks the court's help in protecting his interests, the court must explore the feasibility and fairness of accommodations of this sort . . . . [B]ecause all parties - those who invoke the Fifth Amendment and those who oppose them - should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties.

*Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d at 83-84 (2d Cir. 1995) (citations and internal quotation omitted).

Here, the only argument raised by the SEC in opposing the stay of the time to answer is the concern that this matter be heard as expeditiously as possible, and that defendants should, if appropriate, make motions to dismiss promptly.  It is a concern shared by the Court, which must strive, consistent with Rule 1 of the Federal Rules of Civil Procedure, to construe the Rules so as

---

[7] Although the decision to assert the Fifth Amendment in a civil proceeding has long been referred to as a "Hobson's Choice," as the Ninth Circuit correctly noted, the phrase is misused in this context. *Wang v. Reno,* 81 F.3d 808, 813 (9th Cir. 1996) ("A Hobson's choice is thus an apparently free choice when there is no real alternative . . . Here, [defendant] technically was not confronted with a Hobson's choice . . .rather [he] was forced to choose between two harmful option."). "Morton's Fork" -- a situation involving two unattractive alternatives -- is a more

to achieve a "just, speedy and inexpensive determination" of this matter. As such, to strike the appropriate balance, it is recommended that defendants' motion to stay their time to answer pending the resolution of the related criminal proceeding be GRANTED, but that the motion be DENIED as to the defendants' time to otherwise respond to the Complaint, including filing a motion to dismiss. This resolution accommodates defendants' Fifth Amendment concerns while concurrently requiring them to timely join issue regarding any potential Rule 12 motion.

## OBJECTIONS

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.** *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York      SO ORDERED:
        September 14, 2012

                                          /s/ Gary R. Brown
                                          GARY R. BROWN
                                          United States Magistrate Judge

---

appropriate device to describe this situation. *See Burroughs v. Metro-Goldwyn-Mayer, Inc*., 683 F.2d 610, 623 (2d Cir. 1982) ("plaintiffs apparently hoped to impale MGM with a 'Morton's Fork'").