UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION and UNITED STATES OF
AMERICA,

                    Plaintiffs,

               -against-                                 **MEMORANDUM AND ORDER**
                                                  12-CV-2937 (RPK) (SIL)
BRYAN ARIAS, HUGO A. ARIAS,
ANTHONY C. CICCONE, SALVATORE
CICCONE, DIANE KAYLOR, JASON A.
KERYC, ANTHONY MASSARO,
CHRISTOPHER E. CURRAN, RYAN K.
DUNASKE, MICHAEL P. DUNNE,
MARTIN C. HARTMANN, III, MICHAEL
D. KERYC, RONALD R. ROALDSEN, Jr.,
and LAURA ANN TORDY,

                   Defendants.
-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       Having obtained judgment against defendants who ran a Ponzi scheme, the Securities and

Exchange Commission ("SEC") moves for damages against six of them (the "motion defendants").

In a report and recommendation ("R. & R."), Magistrate Judge Locke recommended damages

consisting of disgorgement, prejudgment interest, and civil penalties.  Five of the motion

defendants filed timely objections.  For the reasons that follow, the R. & R. is adopted in full.

## BACKGROUND

       I assume the parties' familiarity with the prior proceedings.  The following facts come from

the complaint, which defendants have stipulated "shall be accepted as and deemed true" on a

motion for disgorgement, prejudgment interest, and civil penalties.  Judgment as to Michael D.

Keryc ¶ 5 (Dkt. #75); *accord* Judgment as to Christopher E. Curran ¶ 3 (Dkt. #87); Judgment as

to Michael P. Dunne ¶ 5 (Dkt. #89); Judgment as to Ronald R. Roaldsen, Jr. ¶ 3 (Dkt. #92);

Judgment as to Ryan K. Dunaske ¶ 3 (Dkt. #95); Judgment as to Salvatore Ciccone ¶ 5 (Dkt. #113) (collectively, "Judgments").

Motion defendants Salvatore Ciccone, Christopher E. Curran, Ryan K. Dunaske, Michael P. Dunne, Michael D. Keryc, and Ronald R. Roaldsen, Jr. participated in the Agape World, Inc. ("Agape") Ponzi scheme run by Nicholas J. Cosmo.  Compl. ¶¶ 1-2 (Dkt. #1).  Before it collapsed, this Ponzi scheme collected approximately $415 million from over 5,000 investors, including 1,000 in Long Island.  *Id*. ¶ 1.  Ciccone worked as a broker for Agape.  *Id*. ¶ 2.  Curran, Dunaske, Dunne, Michael Keryc, and Roaldsen worked as "sub-brokers."  *Ibid*.  All motion defendants sold investment contracts that falsely represented that the investors' funds were being used in high-interest, low-risk bridge loans.  *Id*. ¶¶ 33-35.  In addition, Dunne and Michael Keryc sold these securities knowing of, or recklessly disregarding, the false statements contained in the instruments, and also encouraged investors to roll interest and principal back into the scheme.  *Id*. ¶ 45.  Each motion defendant sold Agape securities to at least seventy investors, and Ciccone sold Agape securities to at least 348.  *Id*. ¶¶ 18, 22-24, 26-27.  At least two, Curran and Dunne, were affiliated with registered broker-dealers prior to the scheme, *id*. ¶¶ 22, 24, and all six incorporated companies to facilitate their sales, *id*. ¶¶ 18, 22-24, 26-27.  At no time during the scheme were the motion defendants or the Agape securities registered with the SEC.  *Id*. ¶ 8.  When the scheme began to unravel, all of the motion defendants received internal communications reflecting Cosmo's criminal history and the Ponzi scheme's deteriorating financial situation.  *Id*. ¶¶ 67 (meeting of all brokers and sub-brokers held to discuss revelations of Cosmo's criminal history); 73-74 (emails concerning Agape's situation forwarded from broker Jason Keryc to his sub-brokers, who included Curran, Dunaske, Dunne, Michael Keryc, and Roaldsen); 75 (same); 79-80 (same); 81 (same); 87-89 (same); 92 (same).

2

The SEC brought suit against defendants on June 12, 2012.  *See* Compl.  The complaint charged Ciccone, Dunne, and Michael Keryc with violating (i) Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Compl. ¶¶ 106-08; and (ii) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, Compl. ¶¶ 109-11.  In addition, the SEC charged all six motion defendants with violating (iii) Section 15(a) of the Exchange Act, 15 U.S.C. § 78c(a)(1), Compl. ¶¶ 112-15, and (iv) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), Compl. ¶¶ 116-19.

The motion defendants accepted judgments against them.  *See* Judgments.  These judgments provided that "[u]pon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement" or "a civil penalty," and, "if so, the amount(s) of the disgorgement and/or civil penalty."  *Ibid*.  Moreover, the judgments provided that "[i]f disgorgement is ordered," defendants "shall pay prejudgment interest thereon" based on the rate of interest the Internal Revenue Service applies to underpayment of federal income tax.  *Ibid*. These judgments also barred the motion defendants from arguing that they did not violate "federal securities laws as alleged in the Complaint," and provided that for the purposes of a motion for disgorgement or civil penalties, "the allegations of the Complaint shall be accepted as and deemed true by the Court."  *Ibid*.

The SEC has now moved for disgorgement, civil penalties, and prejudgment interest against all motion defendants.  *See* Mot. for Damages (Dkt. #132).  Upon referral from then-presiding Judge Brodie, Magistrate Judge Locke issued an R. & R. recommending an award of disgorgement, civil penalties, and prejudgment interest against all six motion defendants.  *See* R. & R. (Dkt. #142).  Defendants Curran, Dunne, Michael Keryc, and Roaldsen filed objections, as did Dunaske, who alone is proceeding *pro se*.  *See* Curran Objections (Dkt. #144); Dunne

Objections (Dkt. #145); Dunaske Objections (Dkt. #146); Keryc & Roaldsen Objections (Dkt. #147).   On March 28, 2022, I adopted the R. & R. as to defendant Ciccone and directed supplemental briefing.  *See* Mar. 28, 2022 Order.

The R. & R. is now pending as to defendants Curran, Dunaske, Dunne, Michael Keryc, and Roaldsen.   It recommends disgorgement of $208,933.52 against Curran, $214,444.92 against Dunaske, $845,409.43 against Dunne, $809,485.17 against Michael Keryc, and $253,745.80 against Roaldsen.  R. & R. 17.  It also recommends prejudgment interest of $53,788.01 against Curran, $55,206.91 against Dunaske, $217,642.96 against Dunne, $208,394.60 against Michael Keryc, and $65,324.55 against Roaldsen.  *Id*. at 18.  Finally, the R. & R. recommends imposing one-time second-tier civil penalties of $65,000 against Curran, Dunaske, and Roaldsen, and one-time third-tier civil penalties of $130,000 against Dunne and Michael Keryc.  *Id*. at 26.

## STANDARD OF REVIEW

The standard of review a district court should use when considering an order or recommendation from a magistrate judge depends on whether the issue "is dispositive of a party's claim or defense."  Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1).  If a party timely objects to a magistrate judge's recommendation on a dispositive issue, then the district court must "determine de novo" those parts of the ruling that have been "properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C).  The SEC's motion for disgorgement, prejudgment interest, and civil penalties is a dispositive matter under Rule 72.  *See, e.g.*, *SEC v. Nadel*, 206 F. Supp. 3d 782, 784 (E.D.N.Y. 2016); *SEC v. Syndicated Food Serv. Int'l., Inc.*, No. 4-CV-1303 (NGG) (VLS), 2014 WL 1311442, at *1-2 (E.D.N.Y. Mar. 28, 2014); *SEC v. One Wall St., Inc.*, No. 6-CV-4217 (NGG) (ARL), 2008 WL 5082294, at *1 (E.D.N.Y. Nov. 26, 2008).

Those parts of an R. & R. that are uncontested or are not properly objected to may be reviewed, at most, for "clear error."  *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y.

4

2019) (citation omitted); *see Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citing Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition). Clear error will only be found if after reviewing the entire record, the court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (citation omitted).

In considering objections to an R. & R., the district court "will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citation omitted); *see, e.g.*, *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020); 12 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 3070.2 (3d ed. 2021). "Further, courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020) (alteration, quotation marks, and citation omitted); *see, e.g.*, *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994); *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990). Finally, a court will disregard an objection that "merely restates or rehashes the same arguments that [the] party originally made" if it fails to identify any subsequent errors in the magistrate's analysis. *CDS Bus. Servs., Inc. v. H.M.C., Inc.*, No. 19-CV-5759 (JMA) (SIL), 2021 WL 4458884, at *1 (E.D.N.Y. Sept. 28, 2021); *see Sunoco, Inc. v. 175-33 Horace Harding Realty Corp.*, No. 11-CV-2319 (JS) (GRB), 2016 WL 5239597, at *2 (E.D.N.Y. Sept. 22, 2016), *aff'd sub nom. Sunoco, Inc. (R&M) v. 175-33 Horace Harding Realty Corp.*, 697 F. App'x 38 (2d Cir. 2017); *Trustees of Loc. 7 Tile Indus. Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-3042 (RRM) (RER), 2021 WL

1207123, at *5 (E.D.N.Y. Mar. 31, 2021); *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-251 (JMF), 2019 WL 3554460, at *1 (S.D.N.Y. Aug. 5, 2019).

The objections of a *pro se* defendant, as with all *pro se* submissions, are "construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and emphasis omitted).

## DISCUSSION

For the reasons explained below, the objections lack merit, and the R. & R. is adopted in full.

### I.   Dunne's Objections

Dunne's six objections are overruled.

### A.   Dunne's first two objections are overruled under clear error review.

Dunne's first two objections fail to demonstrate clear error in the R. & R.  The first—that the R. & R. does not adequately consider Dunne's efforts to compensate victims, his cooperation with law enforcement, or the fact that he and his family were victims of the Agape fraud—is too "conclusory or general" to trigger *de novo* review.  *U.S. Underwriters Ins. Co. v. ITG Dev. Grp., LLC*, 294 F. Supp. 3d 18, 23 (E.D.N.Y. 2018); *see N.Y.C. Dist. Council of Carpenters v. Allied Design & Constr., LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018).  This objection, only a sentence long, does not identify any specific facts that the magistrate should have considered, state which legal determinations those facts are relevant to, or challenge any specific facts or reasoning contained in the R. & R.  Dunne Objections 1.  Accordingly, I apply clear error review to the portions of the R. & R. relating to this objection, s*ee U.S. Underwriters Ins. Co.*, 294 F. Supp. 3d at 23, and find none.

Dunne's second objection, that the disgorgement award is excessive in light of Dunne's scienter, "could have been raised before the magistrate but w[as] not."  *Gladden*, 394 F. Supp. 3d

at 480 (citation omitted).  While Dunne does make an argument about scienter concerning *civil penalties* in his motion in opposition to the SEC's motion for damages, he makes no equivalent argument pertaining to *disgorgement*.  Dunne Mem. in Opp'n 5-7 (Dkt. #139); *see* R. & R. 23-24 (addressing defendants' scienter arguments concerning civil penalties).  Accordingly, I review this portion of the R. & R. only for clear error.  *Gladden*, 394 F. Supp. 3d at 480.  I do not find Dunne's scienter objection demonstrates clear error in the R. & R.'s determination that Dunne should be ordered to disgorge $845,409.43, as an amount that reasonably reflects the ill-gotten gains he received.

### B.      Dunne's third objection fails because *Liu v. SEC* does not bar disgorgement.

Next, Dunne objects that *Liu v. SEC*, 140 S. Ct. 1936 (2020), bars disgorgement.  Dunne Opp'n 3.  Because Dunne raised *Liu*'s significance earlier and the R. & R. does not discuss *Liu* directly in response, I address this argument *de novo*.  Dunne Mem. in Opp'n 3-4; R. & R. 16-17.

In *Liu*, the Supreme Court upheld the SEC's authority to obtain disgorgement awards from wrongdoers under 15 U.S.C. § 78u(d)(5) but recognized certain limits on that power.  Because "equity . . . authorize[s] courts to strip wrongdoers of their ill-gotten gains," *Liu*, 140 S. Ct. at 1942, but never "lends its aid to enforce a forfeiture or penalty," *id*. at 1941 (quoting *Marshall v. Vicksburg*, 82 U.S. (15 Wall.) 146, 149 (1873)), *Liu* held, first, that disgorgement must be limited to an "individual wrongdoer's net profits." *Id*. at 1942; *see id.* at 1946.  Second, *Liu* held, disgorged funds must be "awarded [to] victims" where possible.  *Id.* at 1942; *see id.* at 1946-48.  Dunne contends that disgorgement is improper under *Liu* because (i) the SEC has not identified a mechanism for returning disgorged funds to investors and (ii) Dunne lacks the means to pay. Dunne Objections 2.

The first argument holds no water because the SEC has stated that it will return disgorged funds to investors if it can collect them.  Mem. in Supp. 10 (Dkt. #133).  At this stage of the

litigation, such a representation is enough. *See SEC v. Penn*, No. 14-CV-581 (VEC), 2021 WL 1226978, at \*14 (S.D.N.Y. Mar. 31, 2021) (collecting cases); *SEC v. NIR Grp., LLC*, No. 11-CV-4723 (JMA) (AYS), 2022 WL 900660, at \*4 (E.D.N.Y. Mar. 28, 2022).

Dunne's second argument also lacks force, because it does not implicate the limitations set out in *Liu*. The amount that a defendant has enriched himself at his victims' expense, not the defendant's financial situation, is the metric that guides the tailoring of disgorgement under *Liu*. *See Liu*, 140 S. Ct. at 1943 (describing the remedy as "tethered to a wrongdoer's net unlawful profits"). In light of this fact, courts in this circuit have frequently awarded disgorgement even when a defendant lacks the present ability to pay the award. *See, e.g.*, *SEC v. Westport Cap. Mkts., LLC*, 547 F. Supp. 3d 157, 174 (D. Conn. 2021) (ordering disgorgement post-*Liu* despite uncertainty as to defendant's ability to pay); *SEC v. Mortenson*, No. 04-CV-2276 (SJF) (WDW), 2013 WL 991334, at \*5 (E.D.N.Y. Mar. 11, 2013); *SEC v. Inorganic Recycling Corp.*, No. 99-CV-10159 (GEL), 2002 WL 1968341, at \*4 (S.D.N.Y. Aug. 23, 2002).

Therefore, *Liu* does not compel altering the R. & R.'s recommended disgorgement award.

## C.   Dunne's fourth objection lacks merit.

Dunne next argues that the magistrate judge's award of prejudgment interest is erroneous because he has not had "use" of the ill-gotten funds since before the complaint was filed. Dunne Objections 2. In support of that point, he makes two arguments. First, he asserts "that he had returned substantial funds to his clients who were Agape victims, directly and by acquiescing to the forfeiture of his funds and the Bankruptcy Trustee's action against his company, AWC." *Ibid.* Second, he contends that his "discharge in bankruptcy showed he did not have access to such funds." *Ibid.*

Dunne is not entitled to relief based on his argument that prejudgment interest was inappropriate because he had returned "substantial funds" to clients. This argument was not made

before the magistrate judge, *see* Dunne Mem. in Opp'n 4-5 (arguing that he did not have "use" of the ill-gotten funds solely because he had filed for bankruptcy), so I consider the argument only to the extent it asserts that the R. & R. clearly erred. *Gladden*, 394 F. Supp. 3d at 480. And Dunne has not shown error, let alone clear error, based on this argument. The decision whether to grant prejudgment interest is generally within "the district court's broad discretion," taking into account "considerations of fairness." *SEC v. Contorinis*, 743 F.3d 296, 307-08 (2d Cir. 2014) (citations omitted). Because Dunne has not identified what funds he returned to clients and when, making it impossible to determine what percentage of prejudgment interest might be appropriate to remit, *see* Dunne Objections 2, considerations of fairness do not favor Dunne. "[T]he amount on which a violator must pay prejudgment interest usually tracks the amount that the party is ordered to disgorge." *Id.* at 308. And in the context of disgorgement, once the SEC has "establish[ed] a reasonable approximation of [a defendant's] profits causally related to the fraud," the burden shifts to the defendant to show that an award in that amount is improper, *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013), because the "risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty," *SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1475 (2d Cir. 1996). Applying that same equitable principle in the context of prejudgment interest, Dunne has not justified eliminating prejudgment interest based on unspecified payments to clients.

Dunne's argument concerning his bankruptcy does trigger *de novo* review, *see* Dunne Mem. in Opp'n 4-5; R. & R. 16-17, but it fails for the same basic reason. Dunne avers that he had his debts discharged in bankruptcy on April 23, 2013. *See* Decl. of Michael Dunne ¶ 11 (dated June 23, 2021) (Dkt. #138). However, Dunne conveniently omits from his sworn affidavit that two years later, the bankruptcy court reopened the proceedings against him after discovering that he apparently *did* possess assets. *See* Mot. to Reopen Chapter 7 Case Due to Discovery of Assets,

*In re Michael P. Dunne*, No. 13-BK-70159 (AST) (E.D.N.Y. Bankr. June 5, 2015) (Dkt. #11);

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records

of which the court [can] take judicial notice.").   Dunne's incomplete affidavit is thus insufficient

to establish his financial status during the relevant period.   Moreover, even if Dunne were bankrupt

for the entire period where prejudgment interest was assessed, "the failure of securities law

violators to enjoy a profit does not, standing alone, make it inequitable to compel them to pay

interest."   *Contorinis*, 743 F.3d at 308.   So this objection also fails.

> **D.   Dunne's agreement with the SEC precludes his fifth objection.**

Fifth, Dunne argues that the prejudgment interest award should be calculated at a lower

rate than the Internal Revenue Service penalty rate, because he did not derive any "benefits" from

the funds.   Dunne Objections 3.   Dunne's objection lacks merit because he agreed that he would

"pay prejudgment interest" based on the Internal Revenue Service rate in the consent judgment

that Judge Brodie has already adopted.   Dunne Judgment ¶¶ 5, 6.   In any event, even setting aside

Dunne's agreement to the IRS rate in the judgment, Dunne's argument depends on his contention

that he did not benefit from use of the ill-gotten funds during the interest period.   But as

explained above, Dunne has not set forth facts adequate to establish what quantity of ill-gotten

funds he lacked access to (due to victim payments or bankruptcy or otherwise) and when.   *See*

pages 9-10, *supra*.

> **E.   Dunne's sixth objection does not compel a lower civil penalty.**

Finally, Dunne objects to Judge Locke's recommendation that the Court impose a $130,000

civil penalty on him.   Dunne argues that Judge Locke did not adequately consider his financial

condition and cooperation with law enforcement when recommending a civil penalty.   Dunne

Objections 3.   Dunne's argument regarding his financial condition is considered only insofar as it

asserts clear error in Judge Lock's recommendation, because the R. & R. directly addresses this

argument, *see* R. & R. 21-22; 25-26, and Dunne does not explain how the R. & R.'s analysis is incorrect or insufficient, *see CDS Bus. Servs.*, 2021 WL 4458884, at *1; *Microbot Med., Inc. v. Mona*, No. 19-CV-3782 (GBD) (RWL), 2021 WL 1192110, at *3 (S.D.N.Y. Mar. 30, 2021). I review Dunne's argument concerning cooperation *de novo*, because it is not directly addressed in the R. & R.

Neither argument persuades. Civil penalties are determined at the Court's discretion, *Razmilovic*, 738 F.3d at 38, "in light of the [relevant] facts and circumstances," 15 U.S.C. § 78u(d)(3)(B). A variety of factors guide this determination, including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); *see SEC v. Gupta*, 569 F. App'x 45, 48 (2d Cir. 2014) (affirming decision resting on these factors). Because this determination depends on the "facts and circumstances" of the case, 15 U.S.C. § 78u(d)(3)(B), a defendant's cooperation with authorities may also be relevant, *see SEC v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003), *aff'd sub nom. SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005).

Applying these factors, I agree with the R. & R.'s recommendation and award a third-tier civil penalty of $130,000. Dunne engaged in "egregious[]" conduct, *Haligiannis*, 470 F. Supp. 2d at 386, ensnaring at least ninety-nine investors in the Agape Ponzi scheme, Compl. ¶ 24. Dunne did so "knowingly or recklessly," urging investors to roll principal and interest back into the scheme. *Id*. ¶¶ 45-46, 57. These actions caused investors substantial losses or the risk of loss, and they recurred "repeatedly." *Id*. ¶ 45. Even if Dunne cooperated with authorities after he was

11

caught, and even if he lacks the money to pay a civil penalty at present, a third-tier penalty of $130,000 is appropriate given the seriousness of his conduct, his scienter, the risks the conduct posed to investors, and the fact that he engaged in such conduct repeatedly.  *See SEC v. Inorganic Recycling Corp.*, No. 99-CV-10159 (GEL), 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002).

## II.    Curran's Objections

Curran's six objections lack merit.

### A.    Curran's objections to pages four, seven, eight, nineteen, and twenty-five of the R. & R. are overruled under clear error review.

I review Curran's objections to pages four, seven, eight, nineteen, and twenty-five of the R. & R. only insofar as they raise claims that assert clear error in the R. & R., because these objections do not "identif[y] the specific portions of the report and recommendation that the objector asserts are erroneous and provide[] a basis for th[e] assertion."  *DuBois v. Macy's Retail Holdings, Inc.*, No. 11-CV-4904, 2012 WL 4060586, at *1 (E.D.N.Y. Sept. 13, 2012), *aff'd*, 533 Fed. App'x. 40 (2d Cir. 2013).

Curran contends that "page four" of the R. & R. is erroneous because he "did not make misrepresentations to investors and was not aware of 'numerous signs of fraud.'"  Curran Objections ¶ 3.  But page four of the R. & R., which focuses on other defendants, does not make either assertion as to Curran.  *See* R. & R. 4.  Accordingly, Curran has not shown clear error in the R. & R. based on this assertion.

Curran's objection to page seven of the R. & R. is similarly deficient.  Curran suggests that the R. & R. contains an error because he "did not falsely promise the safety and use of investment funds."  Curran Objections ¶ 4.  But I can find no error, let alone clear error, in that statement.  Per the complaint—the truth of which Curran has stipulated to, Curran Judgment ¶ 3—all defendants, including Curran, sent investors contracts that "falsely represented" how the invested funds would

be used, Compl. ¶¶ 33-44.  Rather than disclose that these funds would be used in a Ponzi scheme, these contracts represented that they would be used to make high-interest commercial bridge loans, and that they were virtually risk free.  *Ibid*.  Curran does not explain how sending clients these contracts does not constitute "correspond[ence] . . . falsely promising the safety and use of investment funds."  R. & R. 7.  Because this statement of the R. & R. accurately reflects facts that Curran admitted, I find no error—let alone clear error—in this portion of the R. & R.

Curran's objection to page eight of the R. & R. also fails.  Curran argues that he is not alleged to have violated Section 10(b) or Rule 10b-5.  *See* Curran Objections ¶ 5.  Again, the R. & R. does not say that he did.  *See* R. & R. 8 ("The Complaint . . . alleges . . . violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Bryan and Hugo Arias, Anthony and Salvatore Ciccone, Kaylor, Jason and Michael Keryc, Massaro, Dunne, Hartmann and Tordy.").  Again, I find no error, let alone clear error, based on this objection.

And so too for Curran's objection to page nineteen of the R. & R.  *See* Curran Objections ¶ 6.  Curren asserts that he was "not accused of fraud," *ibid.*, but page nineteen of the R. & R. does not make this assertion, *see* R. & R. 19.  Rather, it simply states a general legal proposition that a defendant should not be unjustly enriched by the interest-free use of illegally obtained funds.  *See ibid*.  Accordingly, I find no error, let alone clear error, based on this objection.

Finally, Curran's objection to page twenty-five of the R. & R. fails.  Curran argues that his financial situation should be considered in determining whether to order disgorgement or imposing a civil penalty.  Curran Objection ¶ 8.  But the R. & R. does consider Curran's financial situation, *see* R. & R. 14-15, 25, and Curran fails to identify any actual flaws in the R. & R.'s analysis.  Reviewing the R. & R.'s analysis of Curran's financial situation for clear error, *see U.S. Underwriters Ins. Co.*, 294 F. Supp. 3d at 23, I find none.

**B.      Curran's objection to page twenty-four of the R. & R. fails.**

Curran's objection to page twenty-four of the R. & R. triggers *de novo* review, but it does not compel a different outcome.  The R. & R. asserts that "despite the fact that [Curran and others] improperly argue that they lacked scienter, each of them recklessly disregarded the fact that neither they nor the Agape Securities were registered, as well as the many indicia of possible fraud on the parts of Agape and Cosmo."  R. & R. 24.  Curran objects to the R. & R.'s statement that he improperly argued that he lacked scienter.  Curran Objections ¶ 7.  I review Curran's objection to this portion of the R. & R. *de novo*, because Curran raised objections concerning scienter before the magistrate, *see* Melvyn K. Roth Aff. in Opp'n ¶ 11 (Dkt. #137-1), and the R. & R. does not fully explain its conclusion concerning his scienter.

Nevertheless, the outcome remains unchanged.  In securities cases, "scienter may be inferred from circumstantial evidence."  *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119 (2d Cir. 1999); *Schwab v. E*TRADE Fin. Corp.*, 258 F. Supp. 3d 418, 431 (S.D.N.Y. 2017) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  Here, the facts support an inference that Curran recklessly disregarded his obligations to register as a broker-dealer with the SEC and to only sell registered securities.  Given his prior association with a broker-dealer, Curran would have been familiar with the regulatory requirements the SEC imposes on broker-dealers and securities.  Compl. ¶ 22.  Moreover, Curran was a sophisticated actor who identified himself as a "sub-broker," *id*. ¶ 2, incorporated a company to further his sales of Agape securities, *id*. ¶ 22, and sold securities to at least ninety-nine investors over a period of nearly two years, *ibid*.  Furthermore, Curran received at least six emails from Jason Keryc, the broker that he worked for, containing red flags concerning Agape's business practices, *id*. ¶¶ 22, 73-75; 79-81; 87-89; 92, and attended a meeting concerning Cosmo's criminal history, *id*. ¶ 67.  Accordingly, I reach the same conclusion as the R. & R. in determining that Curran recklessly

disregarded his and Agape's regulatory requirements in light of his own sophistication, prior knowledge, extensive security sales, and repeated warning concerning the Ponzi scheme's status.

In short, Curran's objections do not justify setting aside any portion of the R. & R.

### III. Dunaske's Objections

Dunaske's objections, submitted *pro se*, also do not justify setting aside any portion of the R. & R. Dunaske objects to statements in the SEC's briefing papers, not the R. & R. *See* Dunaske Objections 2-3. Moreover, even construing the objections liberally, they were not raised before the magistrate judge and are thus reviewed only to the extent they allege that the R. & R. is clearly erroneous. *Gladden*, 394 F. Supp. 3d at 480; *compare* Dunaske Mem. in Opp'n (Dkt. #137) *with* Dunaske Objections. Because these objections do not establish clear error in the R. & R., they are overruled.

### IV. Michael Keryc's and Roaldsen's Joint Objections

Finally, Michael Keryc's and Roaldsen's joint objections do not justify setting aside any portion of the R. & R. The objections are perfunctory, and so the clear-error standard applies. *U.S. Underwriters Ins. Co.*, 294 F. Supp. 3d at 23. "The purpose of the Federal Magistrates Act [is] to promote efficiency of the judiciary, not undermine it by allowing parties to 'relitigate every argument which it presented to the Magistrate Judge.'" *Vega v. Artuz*, No. 97-CV-3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citation omitted). Therefore, in order to avoid "reduc[ing] the magistrate's work to something akin to a 'meaningless dress rehearsal,'" "merely perfunctory responses" are disregarded. *Ibid*. (citation omitted); *see Killoran v. Westhampton Beach Sch. Dist.*, No. 17-CV-866 (GRB), 2021 WL 665277, at *1 (E.D.N.Y. Jan. 25, 2021).

All of Michael Keryc's and Roaldsen's objections are "merely perfunctory." *Vega*, 2002 WL 31174466, at *1. None challenge specific facts or legal analysis contained in the R. & R. *See*

15

Michael Keryc & Roaldsen Objections 1-2. Rather, they each make vague assertions that the R. & R. is incorrect. The first generally asserts that the R. & R. does not adequately consider defendants' financial hardship. *Id.* at 1. The second vaguely claims that disgorgement is excessive "in light of all of the factors." *Ibid.* The third states that some victims do not wish defendants to face harsh penalties without explaining how this assertion should factor into the R. & R.'s legal analysis. *Ibid.* The fourth baldly asserts that the R. & R. "erred in awarding pre-judgment interest" without citing any specific legal or factual errors. *Ibid.* Finally, the fifth purports to "incorporate by reference" Dunne's and Curran's objections "insofar as they are applicable," without explaining which are applicable or why they are applicable. *Id.* at 2. "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). Because none of these objections demonstrates clear error in the R. & R., I decline to modify the R. & R. based on these summary assertions.

## V.    The R. & R. Is Adopted in Full

In addition to reviewing the R. & R. as described above in response to defendants' objections, I have reviewed the entirety of the report for clear error and found none. Accordingly, the R. & R. is adopted in full.

## CONCLUSION

The R. & R. is adopted in full. The SEC is awarded disgorgement of $208,933.52 against Curran, $214,444.92 against Dunaske, $845,409.43 against Dunne, $809,485.17 against Michael Keryc, and $253,745.80 against Roaldsen. R. & R. 17. It is also awarded prejudgment interest of $53,788.01 against Curran, $55,206.91 against Dunaske, $217,642.96 against Dunne, $208,394.60 against Michael Keryc, and $65,324.55 against Roaldsen. *Id.* at 18. Finally, the SEC is awarded one-time civil penalties of $65,000 against Curran, Dunaske, and Roaldsen, and one-time civil penalties of $130,000 against Dunne and Michael Keryc. *Id.* at 26.

16

The SEC shall file a letter by March 9, 2023 detailing a mechanism for returning disgorged funds to the motion defendants' victims.

SO ORDERED.

                                         /s/  Rachel Kovner
                                        RACHEL P. KOVNER
                                        United States District Judge

Dated:          February 9, 2023
                Brooklyn, New York